IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G&C AUTO BODY INC, | No. C06-04898 MJJ |
| Plaintiff, | **ORDER** |
| v. | **(1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE;** |
| GEICO GENERAL INSURANCE COMPANY, | |
| Defendant. | **(2) GRANTING PLAINTIFF'S MOTION TO DISMISS WITH LEAVE TO AMEND; and** |
| | **(3) DENYING PLAINTIFF'S SPECIAL MOTION TO STRIKE.** |

## INTRODUCTION

Before the Court are three motions: (1) Plaintiffs G&C Auto Body, Inc. and Dibble's Autobody, the Collision Works' (collectively, "G&C" or "Plaintiffs") Motion to Strike GEICO's Counterclaim ("Motion to Strike") (Docket No. 258); (2) G&C's Motion to Dismiss Defendants GEICO General Insurance Co., Government Employee Insurance Co., GEICO Casualty Company, and GEICO Indemnity Company's (collectively, "GEICO" or "Defendants") Counterclaim ("Motion to Dismiss") (Docket No. 263); and (3) G&C's Special Motion to Strike GEICO's Counterclaim ("Anti-SLAPP Motion"). (Docket No. 266.) The Court finds these motions suitable for resolution without oral argument.

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** G&C's Motion to Strike in the manner discussed below; **GRANTS** G&C's Motion to Dismiss with leave for GEICO to amend its counterclaim; and **DENIES** G&C's Anti-SLAPP Motion.

**FACTUAL BACKGROUND**

Plaintiffs are two auto body repair companies. Defendants are in the automobile insurance business and provide automobile coverage for their policyholders. Plaintiffs occasionally perform work for some of Defendants' policyholders.

On July 21, 2006, G&C filed a complaint against GEICO in California Superior Court ("Complaint") alleging interference with economic relationship; fraud and deceit; and commercial defamation. G&C sought injunctive relief and restitution under California Business and Professions Code §§ 17200 *et seq*. On August 14, 2006, GEICO filed a Notice of Removal under 28 U.S.C. §§ 1446 and 1332 (Docket No. 1.) On August 18, 2006, GEICO filed an Answer to Plaintiffs' Complaint requesting, *inter alia*, dismissal of the Complaint and costs incurred to defend G&C's suit. (Docket No. 8.)

On July 24, 2007, GEICO filed a Motion for Leave to File a Counterclaim Against Plaintiffs and To File an Amended Answer to Plaintiffs' Complaint. (Docket No. 96.) The Court granted GEICO's motion for leave on November 6, 2007. (Docket No. 219.) On November 8, 2007, GEICO filed its counterclaim ("Counterclaim") alleging that G&C intentionally interfered with its contractual relations with its policyholders. (Docket No. 238.) GEICO asserts four independent factual allegations against G&C in the Motion to Dismiss: (1) G&C allegedly assisted policyholders to file claims against GEICO in small claims court and with the DOI; (2) G&C allegedly violated both the California Penal Code ("CPC") and the California Insurance Code ("CIC") by offering policyholders a discount before coming to an agreement with GEICO about the cost of repairs; (3) G&C charged policyholders labor rates that are higher than those commonly accepted in the community; and (4) G&C allegedly charged GEICO's policyholders a rental vehicle fee that is twice the amount G&C intended to keep and returned fifty percent of the same fee to policyholders. GEICO seeks both injunctive and declaratory relief, as well as monetary damages.

Now before the Court are three separate G&C motions challenging GEICO's new intentional interference counterclaim. First, G&C has filed a Motion to Strike because GEICO's Counterclaim differed from the proposed counterclaim ("Proposed Counterclaim") the Court granted leave to file on July 24, 2007. In that motion, G&C argues that because the Counterclaim contains unexpected

2

allegations and fact discovery ended earlier on October 26, 2007, G&C is prejudiced because it has not been able to gather sufficient evidence to defend against the Counterclaim. Second, G&C has filed a Motion to Dismiss. In that motion, G&C asserts that GEICO has failed to plead any factual allegations in its Counterclaim that constitute a claim of intentional interference with contract. Third, G&C has also filed an Anti-SLAPP Motion. G&C asserts that the Counterclaim must be dismissed under California Code of Civil Procedure § 425.16 because GEICO's underlying claim arises from the exercise of G&C's constitutional right to petition for redress of grievances and because GEICO cannot demonstrate a probability of success on the merits.

**LEGAL STANDARDS**

**A.  Motion to Strike.**

Federal Rule of Civil Procedure 12(f) permits the Court to "[strike] from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). The Ninth Circuit has held that "[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) (quotations, citation omitted). However, Rule 12(f) motions are generally disfavored. *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Accordingly, such motions should be denied unless the matter has no logical connection to the controversy at issue and may prejudice one or more of the parties to the suit. *See SEC v. Sands*, 902 F. Supp. 1149, 1166 (C.D. Cal. 1995). In the absence of such prejudice, courts have denied Rule 12(f) motions "even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f)." Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1382 (1990) (quoted in *Rawson v. Sears Roebuck & Co.*, 585 F. Supp. 1393, 1397 (D. Colo.1984)). When considering a motion to strike, the court "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Securities Litig.*, 114 F. Supp. 955, 965 (C.D. Cal. 2000).

**B.  Motion to Dismiss.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a

3

1  Rule 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the
2  Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News*
3  *Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). In considering a Rule 12(b)(6) motion, the Court
4  accepts the G&C material allegations in the complaint as true and construes them in the light most
5  favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).
6  Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or
7  failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v.*
8  *Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*,
9  901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th
10 Cir. 1984). In pleading sufficient facts, however, a plaintiff must suggest his or her right to relief is
11 more than merely conceivable, but plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127
12 S.Ct. 1955, 1974 (2007).

**C.     Anti-SLAPP Motion.**

California's anti-SLAPP legislation provides that a cause of action against a person, arising from the person's exercise of their right of petition or free speech under the federal and state constitutions, in connection with a public issue, is subject to a special motion to strike. Cal. Civ. Proc. Code § 425.16(b)(1). Counterclaims brought in federal court based on California law are subject to the California anti-SLAPP motion to strike procedure. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970-73 (9th Cir. 1999).

The party moving to strike must first make a *prima facie* showing that "the act or acts of which the plaintiff complains were taken 'in furtherance of the defendant's right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute." *Equilon Enterprises v. Consumer Cause, Inc*., 29 Cal. 4th 53, 67 (2002). The burden then shifts to the party resisting the motion to strike to demonstrate a probability of prevailing on the claim. To meet this burden, the plaintiff's complaint must be legally sufficient and supported by an adequate prima facie showing of facts to sustain a favorable judgment if all of the plaintiff's facts are taken to be true. *Jarrow v. LaMarche*, 31 Cal. 4th 728, 738 (2003). Parties "may defeat the anti-SLAPP motion by establishing a probability of prevailing on their claim."

4

*Navellier v. Sletten*, 29 Cal. 4th 82, 95 (2002). Section 425.16(b)(2) directs the court to consider "pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based" in making its determination.

**ANALYSIS**

**A. Motion to Strike.**

**1. Federal Rule of Civil Procedure 15(a) Did Not Provide GEICO With An Automatic Right to Further Amend Its Counterclaim From The Proposed Version Approved By The Court.**

GEICO argues that it had an automatic right to amend its Proposed Counterclaim under Federal Rule of Civil Procedure 15(a) even if the Court finds that the new allegations in the filed Counterclaim are neither substantially related to paragraph 13 of the Proposed Counterclaim nor fall within the scope of leave to file the Proposed Counterclaim that the Court granted. For the following reasons, the Court rejects GEICO's interpretation of the Rule.

Under Rule 15(a), "(1) [a] party may amend its pleading once . . . (A) before being served with a responsive pleading; or (B) within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar . . . ." Fed. R. Civ. P. 15(a)(1)(A), 15(a)(1)(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Here, GEICO's original answer to G&C's complaint could have included, but did not include, counterclaims. GEICO had 20 days from the date of filing its original answer (September 7, 2006) under Rule 15(a)(1)(B) to amend its answer as of right (including the right to add a counterclaim) because a responsive pleading to GEICO's original answer was disallowed and the case was not set for trial at the time. Once the 20 days expired, GEICO could only amend its original answer "with the party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). GEICO clearly understood it had no further automatic right to amend its answer given that it filed a Motion For Leave To File Counterclaim Against G&C Auto Body And Dibble's Auto Body, And To File An Amended Answer To Complaint in July 2007, which the Court granted on November 6,

5

2007.

GEICO's contention that it had yet another automatic right to amend even after the Court's November 6, 2007 Order is without legal basis. GEICO cites *Lucasarts Entertainment Co. v. Humongous Entertainment Co.*, 870 F.Supp. 285, 288 (N.D.Cal. 1993) for the proposition that counterclaims can be amended without the Court's leave before a responsive pleading is filed under Rule 15(a). This proposition, however, is true under Rule 15(a) only for the first answer or counterclaim filed in a case. *Lucasarts* is therefore inapposite. GEICO's one-time ability to amend as of right expired in connection with its original answer. By further changing its proposed Counterclaim after requesting and obtaining Court approval, GEICO exceeded the scope of the Court's Order,[1] and its reliance on Rule 15(a) is misplaced.

**2.     The Court Will Permit The Counterclaim To Proceed But Will Reopen Discovery At GEICO's Expense To Cure Any Prejudice To G&C.**

G&C contends it did not have an opportunity to prepare an adequate defense to GEICO's filed Counterclaim. Specifically, it argues that GEICO's Counterclaim contains a new theory of liability under the California Penal Code ("CPC"). G&C points out that because the Counterclaim was filed after fact discovery cut off, its discovery was directed solely at the allegations contained in the Proposed Counterclaim that did not contain an alleged CPC violation.

GEICO responds that G&C were put on notice of its intent to include the CPC violation in its filed Counterclaim as a result of a deposition that GEICO took on October 30, 2007 of G&C's principal owner. The Court finds this assertion unpersuasive. The deponent was asked two questions about the Penal Code. The first, general question asked was: "Do you have an understanding that it's against the [CPC] to give such a discount to offset a deductible if the insurance company has not agreed to the cost of the repairs?" (Feld Decl., Exh A at 149:15-18.) The second question was specifically directed toward G&C's alleged violation: "Sir, is it your

---

[1] GEICO's assertions that "the [filed] Counterclaim will better assist in clarifying issues for trial" and that it "contains virtually identical allegations as the Proposed Counterclaim" (Opp'n to Pls. Mot. at 17) are inadequate justifications for exceeding the scope of the Court's order. GEICO was well aware it should have requested leave to include the CPC allegations.

6

understanding G&C Auto Body has violated California Penal Code Section 511 in giving these rebates?" (*Id*. at 151:16-19.) The deponent was instructed not to answer both questions on attorney-client privilege grounds. (*Id*. at 151:9 & 151:19-22) Two deposition questions exploring a possible legal theory does not put a party on notice that a new theory of liability will be asserted in the case. Further, even if G&C could have surmised from the October 20, 2007 deposition that GEICO might include the alleged CPC violation in its filed Counterclaim, it would have been unable to conduct further fact discovery at that point because the discovery cut-off had already passed.

To allow GEICO to file a Counterclaim with a new allegation after fact discovery has ended raises the possibility that G&C could be prejudiced if additional discovery is needed to adequately prepare a defense. However, the Court will not strike the filed Counterclaim outright because it can cure any prejudice by reopening discovery and shifting any additional discovery costs to GEICO.

In *SFM Corp. v. Sundstrand Corp.*, 99 F.R.D. 101 (D. Ill. 1983), the court denied the plaintiff's motion to strike an amended counterclaim that was filed after discovery was substantially done. Instead, it allowed the defendant to amend its counterclaim to include additional allegations. However, "justice require[d]" that the addition of the new claims was contingent upon the defendant's "willingness to reimburse [the plaintiff] for its incremental expenses of reexamining (by deposition or interrogatories) previously deposed witnesses . . . ." *Id*. at 107. The Court finds that a similar remedy is appropriate here. Accordingly, to the extent GEICO's Counterclaim ultimately survives the motion to dismiss stage, the Court will permit G&C to conduct any necessary discovery regarding the CPC violation and will require GEICO to reimburse G&C for the discovery expense incurred. In the Court's view, such relief cures any prejudice G&C may have suffered.

**B.     Motion to Dismiss.**

      **1.     The Court Will Not Consider Extrinsic Evidence To Resolve G&C's Rule 12(b)(6) Motion.**

A court may rely on extrinsic evidence that is attached to a Rule 12(b)(6) motion when its authenticity is not contested and the plaintiff refers to, or relies on, the evidence in the complaint. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 & n.4 (9th Cir. 1998), *superceded on other grounds by statute,* 28 U.S.C. § 1453(b). Moreover, if a court considers extrinsic evidence attached to a Rule

7

12(b)(6) motion because a plaintiff either referenced or relied on its contents, the court normally must convert the Rule 12(b)(6) motion into a Rule 56 summary judgment motion and give the plaintiff an opportunity to respond. *Id.* at n.4. Courts have interpreted a plaintiff as "relying" on extrinsic evidence to assert allegations in a complaint when the extrinsic evidence was "integral" or "crucial" to the plaintiff's claims. *See Parrino*, 46 F.3d at 706 n.4; *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 927 n.1 (9th Cir. 2006).

### a. The Nine Invoices Attached To G&C's Motion Are Extrinsic Evidence And Will Not Be Considered.

G&C contends that the Court may consider the contents of the nine invoices submitted with its Motion to Dismiss because GEICO necessarily relied on them in the Counterclaim to assert that G&C violated both the CPC and the CIC. (G&C' Reply in Support of G&C' Motion to Dismiss ("Reply") at 10:9-20.) Therefore, G&C argues, the invoices are integral to GEICO's claims. GEICO, however, counters that no invoices were referenced in the Counterclaim to support a claim of intentional interference with contract against G&C and, therefore, such invoices fall outside the scope of the Motion to Dismiss. The Court finds that the invoices are extrinsic evidence and will not consider them for purposes of resolving this Motion to Dismiss.

G&C cites *In re Stac Electronics Securities Litigation* for the proposition that even if a document is not attached to a complaint, it should be considered if: (1) the complaint refers to such document, (2) the document is crucial to plaintiff's claim and (3) no party questions the authenticity of the copy attached to the Rule 12(b)(6) motion. 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). *In re Stac Electronics* involved a stockholder suit against Stac Electronics for alleged material misrepresentations or omissions during its initial public offering. *Id*. at 1401. The court considered the full text of the prospectus as part of defendant's Rule 12(b)(6) motion even though only part of it was referenced in the plaintiff's complaint. *Id*. at 1401 n.4.

The facts of *In re. Stac Electronics* are distinguishable from the facts here. In *In re. Stac Electronics*, stockholders referenced part of a prospectus in their complaint. Moreover, the prospectus the stockholders relied on to make their investment decisions was a necessary predicate to make out a claim of misrepresentation or omission of material information. In contrast, GEICO

8

did not reference any of the invoices in its Counterclaim nor are they necessary or crucial to prove that G&C violated the CPC and the CIC. Although the invoices may be probative evidence tending to show the timing of when G&C paid discounts to GEICO policyholders, they are not necessary to prove such facts or to establish a CPC violation. Witness testimony or other documentary evidence may be used instead.

G&C also asserts that GEICO relied on the invoices to support its allegations because the invoices were introduced by GEICO as exhibits to question a G&C deponent about whether G&C violated the CPC and the CIC. (Reply at 10:9-20.) The Court finds this argument unavailing. Simply because exhibits are referred to when questioning a witness about a potential violation does not render them central to proving that violation. Although GEICO may be on notice of the invoices' contents, as G&C argues, this does not mean that the invoices are necessary or crucial to assert a CPC and a CIC violation in the Counterclaim. Absent any reference to, or necessary reliance on, the invoices, the Court would distort the nature of a Rule 12 inquiry if it were to consider the invoices part of the pleaded Counterclaim.

### b. The Court Will Not Convert The Rule 12(b)(6) Motion Into A Rule 56 Motion.

District courts have discretion to accept or reject extrinsic documents attached to a Rule 12(b)(6) motion to dismiss. *See Lybrook v. Members of Farmington Mun. Sch. Bd. of Educ.*, 232 F.3d 1334, 1341-42 (10th Cir. 2000) (citing *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998)). Further, "the mere fact that the parties provided documents to the district court did not require the district court to rely on those documents." *Id*. If the Court does accept extrinsic documents, however, it must convert a 12(b)(6) motion to dismiss to a motion for summary judgment. *Jacobson v. AEG Capital Corp.*, 50 F.3d 1493 (9th Cir. 1995) ("If matters outside the pleadings are submitted, the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment under Federal Rule of Civil Procedure 56.")

Here, the Court does not find it appropriate to convert the Rule 12 motion into a summary judgment motion. GEICO filed its Counterclaim on November 8, 2007, after discovery ended. The Court has not yet determined whether further discovery will be necessary in connection with the

9

Counterclaim. Therefore, to consider extrinsic evidence or convert the motion to dismiss at this stage would be premature.[2] Accordingly, the Court will only look to the face of the Counterclaim when determining if GEICO has stated a claim for intentional interference with contract.

**2. GEICO Has Not Adequately Pleaded Its Intentional Interference Counterclaim.**

GEICO raises four independent factual assertions in the Counterclaim to support the claim that G&C intentionally interfered with GEICO's contractual relations with its policyholders: (1) G&C allegedly assisted policyholders to file claims against GEICO in small claims court and with the DOI; (2) G&C allegedly violated both the CPC and the CIC by offering policyholders a discount before coming to an agreement with GEICO about the cost of repairs; (3) G&C allegedly charged policyholders labor rates that are higher than those commonly accepted in the community; and (4) G&C allegedly charged GEICO's policyholders a rental vehicle fee that is twice the amount G&C intended to keep and returned fifty percent of the same fee to policyholders.

As discussed below, none of these four assertions, as currently pleaded, state a claim for intentional interference with contract.

**a. GEICO's Allegation That G&C Assisted Policyholders To File Legal Actions and Complaints Against GEICO Does Not State A Claim.**

G&C asserts that its alleged assistance to GEICO's policyholders in initiating claims against GEICO in small claims court cannot constitute intentional interference with contract because of the California statutory litigation privilege, as well as the limitations on the scope of the tort imposed by the California Supreme Court in the *Pacific Gas* case.

**i. The California Litigation Privilege Does Not Protect G&C Based On The Allegations In The Counterclaim.**

The California litigation privilege applies to any publication or broadcast made in any judicial proceeding. Cal. Civ. Code § 47(b). Case law interprets Section 47(b) as applying to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

---

[2] GEICO cites expert testimony not included in its Counterclaim to prove that it was financially harmed when G&C offered rebates of deductibles and of low cost rental cars to its policyholders. Contemplating the possibility that the Court might convert G&C's Motion to Dismiss into a motion for summary judgment, it includes this testimony to assert that an issue of material fact exists (i.e., it suffered financial harm because of G&C's actions). Because the Court will not treat the Rule 12 motion as a motion for summary judgment, the Court will not consider Blaine Nye's expert testimony.

10

participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).[3]

"Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative." *Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 957 ( 2007) (citing *Rusheen v. Cohen*, 37 Cal.4th 1048, 1058 (2006)). The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. *See Rubin*, 4 Cal.4th 1195; *Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1132, n. 12 (1990). "[I]f the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct. . . . Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." *Jacob B*., 40 Cal. 4th at 957 (citing *Rusheen*, 37 Cal. 4th at 1065). The privilege is absolute in nature and "is now held applicable to any communication, whether or not it amounts to a publication, and all torts except malicious prosecution." *See Silberg*, 50 Cal. 3d at 215 (citations omitted). In addition to communicative acts in a judicial proceeding, the privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." *Id*. at 212.[4]

Here, the gravamen of the relevant allegations involve communicative acts — namely, that GEICO has communicated with policyholders about matters related to the small claims lawsuits. GEICO alleges in its Counterclaim that "G&C *tells* policyholders that G&C will *prepare and file*, in the name of GEICO's policyholders, a legal action against GEICO, as well as with the California

---

[3] "The principal purpose of [the litigation privilege] is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg*, 50 Cal.3d at 213 (citation omitted).

[4] Accordingly, California courts have held that pleadings and proceedings, even potentially those occurring before or after the lawsuit, that have "some relation" to the lawsuit are privileged under Section 47(b). *See, e.g., Rubin v. Green*, 4 Cal. 4th 1187, 1194 (1993) (finding the complaint and subsequent pleadings in the litigation were privileged); *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1379-80 (1999) (noting that a "classic example" of a situation in which the litigation privilege would apply is an "attorney demand letter threatening to file a lawsuit if a claim is not settled"); *Ascherman v. Natanson*, 23 Cal. App. 3d 861, 865 (1972) (finding that the privilege extends to "preliminary conversations and interviews" related to contemplated action).

11

1   Department of Insurance, in an attempt to force GEICO into paying its policyholders rates that are
2   higher than the commonly accepted repair rates."  (Counterclaim at ¶ 17, emphasis added.)  Based
3   on this allegation, G&C's alleged activity is primarily "communicative" in nature.  Even though
4   G&C's alleged communications with GEICO's policyholders may have occurred outside and prior
5   to judicial or quasi-judicial proceedings, such communications have "some relation" to the
6   policyholders' small claims suits because GEICO allegedly told policyholders it will help them file
7   suits against GEICO — the issue under consideration here.  The threshold test for the applicability
8   of the privilege is therefore met.

9           Nonetheless, the Court finds the litigation privilege does not bar liability premised on G&C's
10  communications.  Based on the allegations in the Counterclaim, the Court is unable to conclude as a
11  matter of law that G&C was a "litigant[] or other participant[] authorized by law" to participate in
12  the small claims lawsuits or the DOI complaints.  *Silberg*, 50 Cal. 3d at 212; *see also Wise v. Thrify*
13  *Payless, Inc.*, 83 Cal. App. 4th 1296, 1304 (2000) ("Nonparticipants and nonlitigants to judicial
14  proceedings are never protected from liability under section 47(b).").  To the contrary, drawing all
15  reasonable factual inferences in favor of GEICO, G&C appears to have taken efforts to induce
16  GEICO policyholders to file suit, even though it had no authorized role or stake if its own in the
17  small claims lawsuits or the DOI complaints.  The Court therefore cannot find, at the Rule 12 stage,
18  that the litigation privilege bars this theory of liability.

19                      **ii.     GEICO's Allegations Of Inducing Litigation Fail Under *Pacific***
20                               ***Gas*.**

21          Although the litigation privilege does not apply, GEICO does face a heightened bar when
22  alleging that G&C is liable for inducing litigation.  "[A] plaintiff seeking to state a claim for
23  intentional interference with contract . . . because defendant induced another to undertake litigation,
24  must allege that the litigation was brought without probable cause and the litigation concluded in
25  plaintiff's favor."  *Pacific Gas*, 50 Cal.3d at 1138.  In *Pacific Gas*, the plaintiff did not allege in its
26  complaint that the defendant's inducement of litigation resulted in a lawsuit filed without probable
27  cause.  *Id.* at 1138.  In addition, the court found that the plaintiff could not allege that the litigation
28  terminated in its favor because it was evident from the face of its complaint that the lawsuit was still

12

pending. *Id*. For these reasons, the court held that the plaintiff did not adequately state a claim for intentional interference with contractual relations. *Id*.

Like *Pacific Gas*, GEICO has not alleged in its Counterclaim that G&C induced the policyholders to bring suits in small claims court without probable cause. Although GEICO contends that G&C encouraged the lawsuits "in an attempt to force GEICO into paying its policyholders rates that are higher than the commonly accepted repair rates," (Counterclaim at ¶ 17), this does not, without more, rise to the level of alleging the lawsuits lacked probable cause. Further, GEICO has not alleged that any of the policyholders' suits concluded in its favor. Therefore, under *Pacific Gas*, GEICO has not adequately pleaded a claim for intentional interference. The Court will dismiss this portion of the Counterclaim with leave to amend.

### b. GEICO Has Not Alleged Facts That Would Constitute A Violation of California Penal Code Section 551(b) And California Insurance Code Section 1871.7(b).

G&C asserts that the facts alleged in the Counterclaim do not constitute a violation of the CPC (nor a *per se* violation of the CIC)[5] because the CPC does not require that it agree with GEICO about repair costs before policyholders are given a repair service discount. Accordingly, G&C contends this portion of the Counterclaim must be dismissed. On the other hand, GEICO counters that the allegations are adequate because it and G&C must agree to repair costs before a repair service discount is determined, which G&C allegedly has not done. For this reason, GEICO argues, G&C has violated the CPC and therefore has intentionally interfered with GEICO's contractual relations with its policyholders.

California Penal Code § 551(b) states the following:

---

[5] A violation of CPC Section 551 is a per se violation of CIC Section 1871.7(b). In part, CIC Section 1871.7(b) states:

> "Every person who violates any provision of this section or Section 549, 550 or **551 of the Penal Code** shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation, as defined in Section 3207 of the Labor Code or pursuant to a contract of insurance."

Cal. Insur. Code § 1871.7(b) (West 2008) (emphasis added).

13

> Except in cases in which the amount of the repair or replacement claim has been determined by the insurer and the repair or replacement services are performed in accordance with that determination or in accordance with provided estimates that are accepted by the insurer, it is unlawful for any automotive repair dealer, contractor, or employees or agents thereof to knowingly offer or give any discount intended to offset a deductible required by a policy of insurance covering repairs to or replacement of a motor vehicle or residential or commercial structure. This subdivision does not prohibit an advertisement for repair or replacement services at a discount as long as the amount of the repair or replacement claim has been determined by the insurer and the repair or replacement services are performed in accordance with that determination or in accordance with provided estimates that are accepted by the insurer.

Cal. Penal. Code § 551(b) (West 2007).

To support the assertion that G&C violated California Penal Code Section 551(b), GEICO contends in its opposition brief that G&C provided discounts to GEICO policyholders that offset the deductible yet failed to charge GEICO's policyholders in accordance with GEICO's estimate or GEICO's supplemental repair order. GEICO, however, does not assert this in its Counterclaim. Rather, GEICO simply states in its Counterclaim that "G&C offers repair service discounts to GEICO's policyholders. The amount of the repair service discount is determined before G&C has come to an agreement with GEICO as to the cost of repairs." (Counterclaim at ¶ 13.) GEICO's allegation, on its own, is insufficient to state a violation of the CPC.

GEICO has not asserted facts in its Counterclaim that would establish that G&C offered discounts before first performing repairs in accordance with GEICO's repair or replacement service estimates. Strictly speaking, Section 551(b) does not appear to require an express meeting of the minds (in the contract formation sense) between the insurer and the repair shop. As currently pleaded, GEICO's Counterclaim does not adequately allege the timing of the rebates in a manner that demonstrates a violation of Section 551(b), including whether G&C offered or paid rebates after charging GEICO policyholders an amount differing from GEICO's estimates. Even viewing GEICO's factual allegations in the light most favorable to GEICO, GEICO has not sufficiently pleaded a violation of CPC Section 551(b).

However, the Court rejects G&C's broader argument that Section 551(b) permits a body shop to offer deductible-offsetting discounts if it performs the repairs set forth in the insurer's estimate but seeks a larger payment for the repairs than the amount determined by the insurer. This interpretation of Penal Code Section 551(b) is too strained. Contrary to G&C's contention, Section

14

551(b) prohibits even an "offer" of a discount intended to offset a deductible before two events have occurred: (1) "the amount of the repair or replacement claim has been determined by the insurer", and (2) "the repair or replacement services are performed in accordance with that determination or in accordance with provided estimates that are accepted by the insurer." The Court sees no way to square Section 551(b)'s requirement that the repair shop perform repairs "in accordance with [the insurer's] determination" with G&C's assertion that it can perform the repair work yet still intend to seek additional payment for the repairs beyond the amount determined by the insurer.

The Court will dismiss this portion of the Counterclaim with leave for GEICO to amend its Counterclaim to adequately assert the factual predicates to CPC and CIC violation.

### c. GEICO Has Not Stated A Claim of Intentional Interference With Contractual Relations By Alleging That G&C Charged Policyholders Higher Labor Rates Or That Plaintiffs Provided Rebates On Rental Fees.

GEICO contends in the Counterclaim that because G&C charges labor rates that are higher than the commonly accepted labor rates in the community, it has stated a claim for intentional interference with contract. Independently, GEICO also asserts that G&C engaged in intentional interference by giving fifty percent of rental vehicle fees to GEICO's policyholders once GEICO paid G&C.

Rule 8(a) of the Federal Rules of Civil Procedure requires only that the plaintiff make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In addition, a short and plain statement need only convey "a fair idea of what the plaintiff is complaining" and that there is some "legal basis for recovery." *Davis v. Passman*, 442 U.S. 228, 238 n.15 (1979). "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) GEICO knowledge of this contract; (3) GEICO intentional acts designed to induce a breach or disruption of the contractual relations; (4) actual breach or disruption of the contractual relations; and (5) resulting damage." *Pacific Gas*, 50 Cal. 3d at 1139.

GEICO has not adequately pleaded a claim of intentional interference with contract under Rule 8(a) by asserting G&C charged its policyholders higher labor rates. GEICO has only asserted the G&C charged its policyholders higher rates. GEICO has not alleged any facts to indicate that

15

such conduct actually breached or disrupted GEICO's contractual relations with policyholders. Nor has GEICO alleged any resulting damage. Therefore, the Court will dismiss this portion of the Counterclaim with leave to amend.[6]

Further, GEICO has not adequately pleaded a claim of intentional interference with contract under Rule 8(a) by asserting G&C provided a fifty percent rental fee rebate "but did not inform GEICO of this discount." (Counterclaim at ¶ 11.) Without more GEICO has not shown that G&C intended to disrupt or induce a breach of its contractual relations with its policyholders. Nor has it shown an actual breach or disruption of those contracts. For these reasons, the Court will dismiss this portion of the Counterclaim with leave to amend on this issue.

**C.  Anti-SLAPP Motion.**

**1.  G&C Has Not Met Its Initial Burden Of Showing That The Anti-SLAPP Statute Applies to GEICO's Counterclaim.**

G&C has not met its initial burden of demonstrating that the counterclaim arises out of G&C's own petition rights. "[S]ection 425.16 requires every defendant seeking its protection to demonstrate that the subject cause of action is in fact one 'arising from' the defendant's protected speech or petitioning activity." *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66 (2002).[7]

The Counterclaim does not allege that G&C itself files lawsuits or complaints with the Department of Insurance (DOI) against GEICO; instead, it alleges at most that G&C assists GEICO policyholders in preparing and filing such actions. (Counterclaim ¶ 17.) G&C does not stand in the shoes of the policyholders that bring such actions, and G&C's own right to petition is not placed at issue by the allegations in the Counterclaim. While GEICO's Counterclaim "arises from" acts in

---

[6] GEICO also alleges in its Counterclaim that Dibbles, like G&C, charged policyholders higher rates than those commonly accepted in the community. The Court dismisses this portion of the Counterclaim with leave to amend for the same reasons.

[7] California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16(b)(1), provides:
> A cause of action against a person arising from any act of that person in furtherance of ***the person's*** right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

16

furtherance of GEICO policyholders' right to petition, it does not arise from acts in furtherance of G&C's right to petition.

In the Anti-SLAPP Motion, G&C itself concedes that it is obligated to show that "plaintiffs' lawsuit 'arises from' defendant's exercise of free speech rights. . ." (Anti-SLAPP Motion at 3:11-12.) However, G&C's arguments fail to meet this standard. G&C vaguely argues that the Counterclaim references its "activities in connection with Small Claims Court lawsuits and complaints filed with the DOI." (Anti-SLAPP Motion at 3:16-18.) This argument fails to establish that such activities are in furtherance of G&C's, rather than GEICO policyholders', free speech rights. Even construing the allegations in the Counterclaim in the light most favorable to G&C—and thus assuming that G&C is itself "filing" the small claims actions and DOI complaints "in the name of GEICO's policyholders" (Counterclaim ¶ 17)—the allegations of the Counterclaim make clear that the lawsuits assert the policyholders' grievances, not those of G&C. None of the small claims actions or DOI complaints referenced in the Counterclaim seek to vindicate any rights of G&C itself.

G&C's explication of California jurisprudence on the scope of the right to petition fails to establish that the allegations of the Counterclaim arise from G&C's exercise of its own free speech rights. G&C correctly notes, citing *Pacific Gas,* 50 Cal. 3d at 1134-36, that constitutional protections for a litigant's right to petition have, in some circumstances, been extended so that they shield from liability even the activities of separate entities that encourage or finance litigation. Although *Pacific Gas* limited the scope of California intentional interference torts against those that induce litigation, the rationale offered in *Pacific Gas* for restricting tort liability against such non-litigants was to prevent an indirect chilling of the litigant's petition rights. *Id.* at 1135-36. Thus, *Pacific Gas* does not undercut the Court's conclusion that G&C cannot qualify for anti-SLAPP protection when its own petition rights have not been implicated.

Because G&C has failed to meet its initial burden, the Court will deny the Anti-SLAPP Motion.

///

///

17

///

## CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** G&C's Motion to Strike. To the extent GEICO's Counterclaim ultimately survives the motion to dismiss stage, the Court will permit G&C to conduct any necessary discovery regarding the CPC violation and will require GEICO to reimburse G&C for the discovery expense incurred. In all other respects, GEICO's motion to strike is denied.

The Court also **GRANTS** G&C's Motion to Dismiss, and for the reasons set forth above, **DISMISSES WITH LEAVE TO AMEND** the Counterclaim in its entirety. Leave to amend shall be limited to the four current factual bases for the Counterclaim discussed above. GEICO shall file an amended counterclaim, if any, within twenty (20) days of the entry of this Order.

Finally, the Court **DENIES** G&C's Anti-SLAPP Motion.[8]

**IT IS SO ORDERED.**

Dated: March 11, 2008

MARTIN J. JENKINS

UNITED STATES DISTRICT JUDGE

---

[8] The Court also **GRANTS** GEICO's Motion TO File Denis Turrentine's Declaration In Support Of GEICO's Opposition To Plaintiffs' Special Motion To Strike Counterclaim. (Docket No. 334.) GEICO has demonstrated good cause to file the supplemental declaration. However, the Court will **GRANT** G&C's Motion To Strike (Docket No. 349) and hereby **STRIKES** Docket No. 346, which is GEICO's Notice of Filing Response To Cure Plaintiffs' Objections Raised In Docs. #324 and #325. GEICO's supplemental submission of expert testimony was unauthorized and GEICO has not established good cause for the filing. Because this supplemental submission is stricken, the Court **DENIES AS MOOT** GEICO's Motion For Sealing Order (Docket No. 348), which relates to portions of the supplemental submission.