IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G&C AUTO BODY INC, | No. C06-04898 MJJ |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| GEICO GENERAL INSURANCE COMPANY, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Defendant GEICO's Motion For Partial Summary Judgment. (Docket No. 274.) By a December 12, 2007 Order, this Court previously struck the portion of the Motion directed at Plaintiff G&C's first cause of action for unfair competition. (Docket No. 287.) The parties have fully briefed the portion of the Motion seeking summary judgment on G&C's second and fourth causes of action, for intentional interference with prospective economic advantage and defamation, respectively. Having reviewed the parties' submissions, the Court finds this Motion suitable for resolution without oral argument, and **DENIES** the Motion in its entirety.

## FACTUAL BACKGROUND

Plaintiffs are two auto body repair companies that have sued the defendant insurance companies. Defendants provide automobile coverage for their policyholders. Plaintiffs on occasion perform work for some of Defendants' policyholders. Plaintiffs have asserted four claims against Defendants in this action: (1) unfair competition under Section 17200, (2) interference with

economic relationship, (3) fraud and deceit, and (4) commercial defamation.

Plaintiffs are two auto body repair companies (collectively "G&C') that have sued the defendant insurance companies (collectively "GEICO"). The gravamen of G&C's allegations against GEICO is that the labor repair rates that GEICO uses to resolve the claims of their policyholdesr are below the prevailing auto body rates in the region, and below the allegedly reasonable labor repair rates that G&C is entitled to charge for auto repair work. G&C also contends that GEICO is steering its policyholders away from taking their business to G&C in an effort to avoid having to pay G&C's allegedly reasonable rates.

G&C originally asserted four claims against GEICO in this action: (1) unfair competition under Section 17200, (2) interference with economic relationship, (3) fraud and deceit, and (4) commercial defamation. GEICO previously moved for summary judgment with respect to the first and third causes of action; in a December 12, 2007 Order, this Court granted summary judgment in favor of GEICO on G&C's fraud claim and on the restitutionary portion of G&C's Section 17200 claim, but denied summary judgment with respect to the portion of G&C's Section 17200 claim seeking injunctive relief. (Docket No. 290.)

GEICO now seeks summary judgment with respect to G&C's second and fourth causes of action.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion

for summary judgment. *Anderson*, 477 U.S. at 247-48. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *Id.* at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id.* at 250. Thus, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in its favor. *Id.* However, "[i]f the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

**ANALYSIS**

**I.     Count II: Interference With Economic Relationship.**

GEICO contends that summary judgment should be granted on G&C's claim for intentional interference with prospective economic advantage (Count II) on two independent grounds. First, GEICO contends that the tort is inapplicable under California law because GEICO is not a stranger to the relationship between G&C and GEICO's policyholders. Second, GEICO contends that G&C is unable to prove GEICO's intent to interfere, a necessary element of the claim.

**A.     California Law Has Now Clarified That A Defendant Need Not Be A "Stranger" To The Economic Relationship To Be Subject To Intentional Interference Liability.**

GEICO contends that under California law, an entity that has a "direct interest or involvement" in the allegedly disrupted relationship cannot be held liable for interference with that relationship. In support of this legal principle, GEICO relies on a line of federal cases beginning with the Ninth Circuit's decision in *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 2761 F.3d 825, 834 (9th Cir. 2001), and including subsequent federal district court cases that have directly relied upon *Marin Tug*. While these federal cases do stand for the proposition for which GEICO cites them, a California appellate decision handed down after *Marin Tug—Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal. App. 4th 344, 354 (2005)—casts serious doubt on the viability of this line of decisions for purposes of interpreting California state law.

In *Marin Tug*, the Ninth Circuit granted summary judgment on a claim for interference with

prospective economic advantage to a defendant with a direct interest in the economic relationship at issue. The Ninth Circuit appeared to base the result, in part, on its view that "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party stranger to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by pursuit of its interests." *Marin Tug*, 271 F.3d at 832. Several district courts subsequently relied upon *Marin Tug* to arrive at similar dispositions where defendants were not strangers to the underlying economic relationships or contracts. *See McGehee v. Coe Newnes/McGehee ULC*, 2004 WL 2496127 at *6 (N.D. Cal. Nov. 4. 2004) (relying on *Marin Tug* to dismiss intentional interference with prospective economic relations claim because defendants could not be characterized as "strangers" to the business relationship); *ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087, 1097 (N.D. Cal. 2006) (same); *National Rural Telecommunications Coop. v. DirecTV, Inc.*, 319 F. Supp. 2d 1059, 1069-73 (C.D. Cal. 2003) (same); *In re Leisure Corp.*, 2007 WL 607696 at *13 (N.D. Cal. Feb. 23, 2007) (same).

However, in 2005, a California appellate court directly rejected *Marin Tug's* characterization of California law on this point. *See Woods v. Fox Broadcasting Sub., Inc.*, 129 Cal. App. 4th 344, 354 (2005). *Woods* rejected the defendant's contention that an intentional interference with prospective economic advantage claim should fail because the defendant was not a stranger to the relevant economic relationship. In *Woods,* the plaintiff was a 49.5% shareholder in Fox Family that had sued other shareholders of Fox Family for intentional interference with contract and intentional interference with prospective economic advantage, alleging that the shareholders had engineered a sale of their and plaintiff's interests in Fox Family in a manner that reduced plaintiff's stock option buyout rights. *See id.* at 348. The defendant shareholders contended that because they owned just under half of Fox Family, they were not strangers to plaintiff's contracts with Fox Family and therefore could not be held liable for interfering with those contracts. The defendant shareholders relied heavily upon *Marin Tug* in support of this argument.

*Woods* rejected the defendant shareholder's contention, and in the process offered a narrower reading of *Marin Tug* than the decision might suggest on its face. *Woods* characterized the holding

4

in *Marin Tug* as one primarily focused on the "independent wrongfulness" element of a California tort claim. *Woods* concluded that *Marin Tug* could not be read to protect a defendant who has "no more than an economic interest or connection to the plaintiff's contract with some other entity." *Id.* at 355. *Woods* also observed that *Marin Tug* should not be read to establish "some new standard of immunity for contract interference claims." *Id.* at 355 n. 10. *Woods* specifically stated:

> we conclude that *Marin Tug* did no more than evaluate the wrongfulness of Shell's conduct in the context of its relationships with *Marin Tug* and the tug company's customers and was not extending immunity from contract interference claims to an even broader, more attenuated class of persons.

*Id.*

In light of *Woods*, the Court is unable to conclude that, as a matter of California state law, G&C's intentional interference with prospective economic advantage claim cannot extend to GEICO merely because GEICO has an economic interest in the relationship between G&C and its policyholders. *Woods* casts serious doubts on this Court's ability to rely on *Marin Tug*—or on the federal district courts that have since followed it—for the proposition that the intentional interference claim must fail merely because GEICO is not a stranger to the relationship between G&C and its policyholders.[1] "When a decision turns on applicable state law, and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Aetna Casualty & Surety Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993). "In the absence of a pronouncement by the highest

---

[1] G&C's own attempt to distinguish the *Marin Tug* line of cases by arguing that the "non-stranger immunity" declared in *Marin Tug* applies only to interference with existing contracts, but not with prospective relationships, is not a principled distinction found in the cases, and this Court does not adopt it. *Marin Tug*, as well as several subsequent district court cases, applied the principle that *Woods* has now rejected to dismiss claims for intentional interference with prospective relationship, and to dismiss claims that involved interference only with a relationship that had not matured into a contract. *See Marin Tug,* 271 F.3d at 828-31 (dismissing intentional interference with prospective economic advantage claim where defendant was accused of interfering with plaintiff's ability to "do business with third-party fuel brokers and consumers who otherwise would have hired it to transport Shell oil"); *McGehee*, 2004 WL 2496127 at *6 (relying on *Marin Tug* to dismiss intentional interference with prospective economic relations claim because defendants could not be characterized as "strangers" to the business relationship); *ViChip Corp.*, 438 F. Supp. 2d at 1097 (relying on *Marin Tug* to dismiss both intentional interference with contract and intentional interference with prospective economic advantage claims because joint venture was not a stranger to joint venture agreement); *National Rural Telecommunications Coop.*, 319 F. Supp. 2d at 1069-73 (relying on *Marin Tug* to dismiss both intentional interference with contract and intentional interference with prospective economic advantage claims); *In re Leisure Corp.*, 2007 WL 607696 at *13 (relying on *Marin Tug* to dismiss intentional interference with prospective economic advantage claim because defendant "was not a stranger to the relationship" between defendant and third-party).

5

court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *Owen v. U.S.*, 713 F.3d 1461, 1464 (9th Cir. 1983). Here, the 2005 *Woods* decision provides a strong indication that the pronouncement by the Ninth Circuit in the 2001 *Marin Tug* opinion regarding the scope of the California intentional interference tort would not be adopted by California's highest court. Under such circumstances, this Court is not bound by the interpretation of state law set forth in *Marin Tug*. *See Owen*, 713 F.3d at 1464; *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 885 n.7 (9th Cir. 2000).

Instead, under *Woods*, the Court finds that California's highest court would likely not find that GEICO is exempt from interference liability merely because it has an economic interest in the relationship between its policyholders and G&C. *Woods* rejected this kind of broad exception, and either declined to follow, or adopted a narrow interpretation, of earlier California and federal decisions to the extent they stood for such an exception. *Woods*, 129 Cal. App. 4th at 354-56 & n.11.

### B. G&C Has Adduced Sufficient Evidence For A Reasonable Jury To Conclude That GEICO Acted With An Intent To Interfere.

Contrary to GEICO's assertions, G&C has come forward with sufficient evidence from which a reasonably jury could conclude that GEICO acted with an intent to interfere. Although most of G&C's evidence falls short of this standard, one passage of deposition testimony is competent evidence that meets G&C's burden of production. In particular, the deposition testimony of Jeremy Doupe, a damage appraiser with Hartford Insurance Company, regarding a conversation he had with David Scott, GEICO's damage adjuster, constitutes sufficient evidence of an intent to interfere. As Mr. Doupe testified:

> Q. What was the next thing you recall happening?
>
> A. We just talked about paint times and then somehow he got into how he disliked G & C.
>
> Q. Did he just come out and say, "I don't like G & C?"
>
> A. No. I don't know exactly how the conversation exactly went or how it got led up to that but it was expressed.

6

| | |
|---|---|
| Q. | Did he ever express to you – he being Mr. Scott – that he wanted to put Mr. Crozat out of business? |
| . . . | |
| A. | Not that I can recall that he would put him out of business. |
| Q. | What is it that you do recall, sir? |
| A. | Well, just that it was kind of, I don't know, childish, actually. ***Just that, he just didn't like G & C very well and possibly he could, you know, disrupt their business in some sort.*** |

(Doupe Depo at 13:2-21, Duffy Decl, Exh. Z, emphasis added.)

This testimony provides an adequate basis for a reasonable jury to conclude that GEICO was acting with the requisite specific intent to interfere; namely, an intent to "disrupt [G&C]'s business." Although almost all of the other evidence submitted by G&C on this point falls short of establishing an intent to interfere,[2] Mr. Doupe's deposition testimony creates a genuine disputed issue of fact regarding GEICO's intent that must be placed in the factfinder's hands. G&C's evidentiary showing is threadbare on this element of the intentional interference tort, but it is sufficient to get to the jury.

GEICO's reliance on *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 283 Or. 201 (1978) is misplaced. Though the background factual pattern in *Top Service* has similarities to the facts here, the *Top Service* court found insufficient evidence of an intent to interfere because the only evidence submitted at trial consisted of evidence of acts that were wholly consistent with the defendant insurance company's pursuit of its own business interests as it saw them. *See id.* at 212. Moreover, two pieces of evidence that may have been improperly excluded by the trial court were not sufficiently probative of the defendant's intent at the relevant time period when engaging in steering

---

[2] G&C's other evidence, set forth in detail at pages 4:23-6:19 of G&C's opposition brief, falls short of proving an intent to interfere. For example, Mr. Cases' testimony regarding GEICO's badmouthing and dislike for G&C, and steering of customers away from G&C, does not constitute sufficient evidence of a specific intent to interfere, because GEICO's dissatisfaction with G&C's rates constitutes an equally-plausible explanation for this behavior. (Case Depo. at 26:15-27:18, 35:23-36:20, Duffy Decl., Exh. X.) Similarly, Mr. Baumert's deposition testimony regarding encouraging customers not to go to G&C, and regarding the fact that Mr. Scott was taking the dispute with G&C "too personally," is subject to the same equally-plausible explanation and does not establish a specific intent to interfere. (Baumert Depo. at 123:17-124:7, 124:21-24, 125:13-126:4, 131:17-132:8, Duffy Decl., Exh. Y.) The email from Tomas Clark (Duffy Decl., Exh. CC), although strong evidence that GEICO discussed steering policyholders away from G&C, does not reveal anything about GEICO's motivations for doing so and does not constitute evidence from which a reasonable jury could infer an intent to interfere. Finally, Gene Crozat's declaration, which recounts what he learned from conversations with third-party Jeremy Doupe about the content of conversations between Mr. Doupe and Mr. Scott, constitutes inadmissible hearsay. (Crozat Decl., ¶ 5, Duffy Decl, Exh. BB.) Although the statements of Mr. Scott may not constitute hearsay as a statements of a party-opponent, the out-of-court statements by Mr. Doupe that described this conversation to Mr. Crozat fall under no exception to the hearsay rule.

or defamatory conduct. *See id.* at 212-13. In contrast, G&C has adduced specific evidence of intent—the testimony of Mr. Doupe—that is far more probative of the intent element than any of the evidence considered in *Top Service*.

### C. Because GEICO Did Not Assert In Its Opening Brief That Its Actions Were Not Independently Wrongful Acts, The Court Will Not Reach The Issue.

For the first time in its reply brief, GEICO asserts that, as a matter of law, its actions were not independently wrongful acts. (Reply at 9:23-10:25.) This argument was not raised in GEICO's opening brief. (Mot. at 11:17-18.) At least a portion of GEICO's belated argument rests upon the assertion that G&C failed to come forward with evidence at the summary judgment stage of a independently wrongful act. Because G&C was not put on notice under the *Celotex* standard of its need to come forward with evidence to establish this element of the intentional interference claim, the Court will not reach this issue for purposes of resolving the Motion.[3]

## II. Count IV: Defamation.

GEICO contends that G&C's defamation claim must be dismissed because GEICO's communications with its policyholders fall under the common interest privilege. The common interest privilege is a qualified privilege that only applies to a publication made without malice. GEICO contends that G&C cannot prove the "malice" exception. The Court need not determine whether the common interest privilege applies here, because even assuming it does, G&C has adduced sufficient evidence to establish that GEICO acted with malice, which prevents application of the privilege.

For purposes of the common interest privilege, malice is defined as "a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person. Malice may also be established by showing that defendants lacked reasonable grounds to believe the statement true and therefore acted with reckless disregard for plaintiff's rights." *Family Home & Finance Ctr. v. Fed. Home Loan Mortgage Corp.*, 461 F. Supp. 2d 1188, 1197 (C.D. Cal. 2006) (quotations omitted). "The malice necessary to defeat a qualified privilege is 'actual malice' which is

---

[3] The fact that G&C, out of an abundance of caution, partially addressed the "independently wrongful" issue in its opposition brief (Opp. 16:4-18:7) does not lead this Court to conclude that GEICO adequately shifted the burden under *Celotex* on this issue.

8

established by a showing that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and thereafter acted in reckless disregard of the plaintiff's rights." *Taus v. Loftus*, 40 Cal. 4th 683, 721 (2007) (citations omitted). "[I]f the publication is made for the purpose of protecting the interest in question, the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the privilege." *Williams v. Taylor*, 129 Cal. App. 3d 745, 752-53 (1982).

Here, the same evidence that suffices to establish an intent to interfere for purposes of the intentional interference tort also constitutes sufficient evidence from which a reasonable jury could conclude that GEICO's allegedly defamatory statements about G&C were motivated by ill will or designed to injure G&C. Specifically, Mr. Doupe's testimony that Mr. Scott, a GEICO damage adjustor, admitted that he "just didn't like G & C very well and possibly he could, you know, disrupt their business in some sort" (Doupe Depo. at 13:2-21, Duffy Decl., Exh. Z) is evidence of a specific intent by GEICO to disrupt G&C's business out of ill will. Although G&C's evidentiary showing is threadbare on the malice element, it is sufficient to raise a triable issue of fact that must be resolved by a jury.

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** GEICO's summary judgment motion in its entirety.

**IT IS SO ORDERED.**

Dated: March 11, 2008

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE